JULIO ROJAS ROSARIO, Petitioner, *v.* DISTRICT COURT OF PUERTO RIQO, ARECIBO SECTION, HON. A. LENS CUENA, JUDGE, Respondent; ÁNGEL NATAL RÍOS ET AL., Interveners.

No. 1878.    Argued May 3, 1951.—Decided May 18, 1951.

*Antonio Riera, Aurelio Rivas Rosario, Ramón Gandía Biscombe,* and *Alberto Ferrer,* for petitioner.  *E. Pérez Casalduc* for interveners, defendants in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Once more we have a case involving a dispute as to the boundary line of adjacent properties.  Julio Rojas Rosario filed in the district court, Arecibo Section, a suit for injunc-

tion against Ángel Natal Ríos and others to prevent them from using part of a farm which Rojas alleges he has rented from the Land Authority. After a trial on the merits, on October 26, 1949 the district court entered judgment dismissing the petition on the ground that "injunction is not the appropriate proceeding to resolve the controversy between the parties and to establish the limits and boundaries of their tracts of land . . . the appropriate procedure being a survey and setting of landmarks by attendance and agreement of the parties, or if that is not obtained, by an ordinary civil action." This judgment became final and unappealable.

Thereafter Act No. 238, Laws of Puerto Rico, 1950, was enacted. On July 11, 1950 the Land Authority and Rojas filed a petition with the justice of the peace of Barceloneta, requesting that Ángel Natal and others be summoned and that the justice of the peace determine "a provisional legal status" of the boundary line between the properties pursuant to Act No. 238.[1] After following the procedure established by § § 2 and 3 of Act No. 238, the justice of the peace entered an order authorizing Rojas to construct a wire fence to enclose the land in accordance with his lease as a provisional measure, it being understood that if thereafter it was established that the fence is on the property of the members of the Natal Sucesión, Rojas will be obliged to destroy the fence at his own expense.

---

[1] Section 4 of Act No. 238 provides in part as follows: "It shall be the duty of the magistrate, in the course of the hearing, to try to bring the parties to agreement so that the controversy may be satisfactorily settled. Were this not possible, and if as a result of the hearing the magistrate is satisfied that there exists, under the law, a controversy between the parties, requiring judicial adjudication, he shall enter a resolution determining which of the parties is probably right. In line with this resolution, the magistrate shall determine a provisional legal status which shall be binding on the parties while the controversy is prosecuted according to due process of law. The resolution may be to authorize or deny the right of way through a particular property, and to determine the place to pass, or to direct the provisional determination of boundaries."

On August 31, 1950 the Natal Sucesión filed a motion in the district court, Arecibo Section, within the original injunction suit praying for an order requiring the justice of the peace to set aside his order and Rojas to demolish the wire fence. After a hearing, the lower court on September 20, 1950 granted this motion. It stated that "the said Act No. 238, approved after judgment in this case was final and unappealable, is not applicable to the facts of this case, and the justice of the peace lacked the power to enter the order . . ." It found that the action of the justice of the peace and Rojas was not "intentional" and therefore found that they were not in contempt. However, the district court directed Rojas to remove the fence and for the marshal to do so if Rojas did not, with the proviso that any act by Rojas to prevent compliance with the order or to build the fence again would be considered as contempt. The district court denied the motion of Rojas for reconsideration. We granted certiorari to review the order of the district court.

██ We do not stop to determine whether, as Rojas contends, the district court lacked jurisdiction to enter the order involved herein. Cf. Ortiz v. Aguayo, 26 P.R.R. 668; Goffinet et al. v. Polanco, 30 P.R.R. 768; § 678, Code of Civil Procedure, 1933 ed. Even if we assume that it had jurisdiction, its own judgment in the injunction suit demonstrates that it had not passed on the merits of the dispute between the parties. Rather it dismissed the suit on the ground that injunction was not the appropriate remedy. This was therefore not a conclusive adjudication of the controversy. And it did not prevent Rojas from seeking relief in another suit, whether under existing law or under a subsequently enacted statute.

Act No. 238 has the laudable purpose of preserving the peace by providing a simple and summary procedure for the determination of a provisional legal status in boundary disputes pending disposition "through the ordinary processes of

law". See Statement of Motives, Act No. 238. Rojas was therefore entitled to proceed under it before he brought the appropriate proceeding suggested by the district court itself in its judgment in the injunction suit.

It is clear that under § 6 of Act No. 238 the district court could not interfere with the order of the justice of the peace. Section 6 provides that such an order "shall be unappealable, but shall not constitute res adjudicata with regard to any of the points adjudicated herein." Act No. 238 establishes a summary method to fix peaceably the provisional status of the land in dispute pending the regular judicial determination thereof. In order to make this summary method effective, the Legislature provided that such an order shall be unappealable. This means that no court, including the district court, may interfere with the order of the justice of the peace, unless it acts pursuant to § 7.

Section 7 provides that "Upon the filing of an ordinary action, a competent court may interlocutorily amend or stay the magistrate's order, if gross error or special circumstances so justifying it, are shown to him, after giving the other party an opportunity to be heard." This Section did not enable the district court to act within the injunction proceeding. The law of that case by virtue of the final judgment therein was that it was not the appropriate proceeding to determine the rights of the parties. Consequently, only if and when either party filed such an appropriate proceeding, would § 7 come into play.

The result we have reached makes it unnecessary to discuss the other questions raised by the petitioner.

The order of the district court of September 20, 1950 will be vacated and the motion of August 31, 1950 praying for that order within the injunction suit will be denied.